[Civil No. 4374.   Filed November 17, 1941.]

[119 Pac. (2d) 116.]

STANDARD OIL COMPANY OF CALIFORNIA, a Corporation, and W. J. KELLY, Appellants, v. HELEN SHIELDS and J. HOWARD SHIELDS, Her Husband, Appellees.

Messrs. Wilson, Compton & Wilson, for Appellants; Messrs. Baker & Whitney, Mr. Lawrence L. Howe and Mr. Harold E. Whitney, of Counsel.

Mr. Henry C. McQuatters, Mr. Frank W. Beer, and Mr. William G. Christy, for Appellees.

LOCKWOOD, C. J.—This is an appeal by Standard Oil Company of California, a corporation, and W. J. Kelly, defendants, from a judgment in favor of Helen Shields, plaintiff, for damages resulting from an

automobile accident. The jury returned a verdict in favor of plaintiff in the amount of $51,436.40. On the motion for new trial, the trial court granted a remitter of $8,000, thus reducing the amount of the judgment to $43,436.40, and it is from this latter judgment that the appeal is taken.

There are twelve assignments of error which raise seven propositions of law, which we shall consider in their order. The first two are that the evidence offered by plaintiff, together with the uncontroverted physical facts surrounding the accident, shows that the conclusion, which must have been reached by the jury to sustain the verdict, that defendant Kelly was guilty of negligence which was the proximate cause of the accident and that plaintiff was not guilty of contributory negligence, is such that it is either physically impossible or incredible beyond the ordinary experience of mankind, and a verdict based on evidence of that nature cannot stand.

Plaintiff frankly admits the rule of law to be as stated by defendants, but denied that the evidence, taken as a whole, makes it either impossible or incredible that the accident was due to defendant Kelly's sole negligence. This requires a consideration of the evidence.

The undisputed facts are as follows: On January 24, 1940, between six thirty and seven o'clock in the evening, plaintiff was driving a Plymouth automobile in a southerly direction, and defendant Kelly, who was at that time in the discharge of his duties as an employee of Standard Oil Company, was driving a Chevrolet pickup truck belonging to the company in a northerly direction, on the Cottonwood-Camp Verde highway in Yavapai County. At a point about thirteen miles south of Cottonwood the cars collided, and plaintiff was seriously injured as a result of the collision. The highway at the point of the collision is

an unpaved, graded and graveled road, with the usable portion at the time between twenty and twenty-two feet in width.

The real question on this phase of the case is whether at the time and point of impact the Plymouth was entirely on its right-hand of the center of the road, or partially at least on its left-hand of the center. The testimony of Kelly is that he was driving his car partly on his wrong side of the road when he noticed the lights of the Plymouth approaching him about 150 feet away and saw that it also was partially on its wrong side of the road. He immediately threw his car into second gear and sped up, turning sharply to his right to avoid a collision. The front of the Plymouth struck the left side of the Chevrolet, and he claimed that at the instant of impact that portion of the Plymouth which struck his car was on its wrong side of the center of the road. Plaintiff testified with equal positiveness that she was at all times on her own side of the road, and that the Chevrolet at the time and point of impact was on its wrong side of the road.

We have here a sharp conflict in the evidence, and if there were nothing more we would be bound to accept the verdict of the jury on this point. Nor do defendants deny this. Their contention is that the uncontroverted and uncontrovertible physical facts, as shown by various measurements and photographs of the damaged cars, which measurements and photographs plaintiff admits are correct representations of the condition of the cars and of the road immediately after the collision, show conclusively that it was impossible for the collision to have occurred as it did, if the Plymouth was entirely on its own side of the road.

At the oral argument in this court counsel for defendants made various physical demonstrations tending to support their theory on this point and

we were considerably impressed thereby. But, upon a more careful study of the exhibits, together with the oral evidence, we feel that while if we were sitting as triers of the facts we would be inclined to accept defendants' theory as the most probable, we cannot say that it was physically impossible or even reasonably incredible that the collision could have occurred when the Plymouth was entirely upon its right side of the center of the road. It is admitted by defendant Kelly that immediately before the collision he was partially on his wrong side of the road and the measurements of the tracks taken immediately after the accident show this to be correct. He testified that he turned at an angle and attempted to get as far to his right side of the road as possible just before the impact. The appearance of the two cars after the accident shows conclusively that they came together at an angle, and not in a head-on collision. This confirms the testimony of Kelly that he was attempting to turn from his wrong side to his right side of the road just before the time of the collision. Their appearance also indicates that the blow was a glancing one and not a collision at right angles, but it is impossible to ascertain by the physical exhibits or the oral evidence at just what angle the impact occurred, and this is, of course, the vital issue. If the impact had been at right angles, considering the width of the road and the length of the cars, it would have been impossible for the Plymouth to have struck the Chevrolet as it did and still have been entirely on its own side of the road. On the other hand, if the angle had been a sufficiently acute one and the impact a glancing and sliding one, we think it would have been physically possible for the Plymouth to have been entirely on its own side of the road at the moment of impact.

■■ Much was made in the argument of the manner in which the two cars moved after the collision and the points at which they came to rest. Experience tells us that when two heavy bodies of the nature of these cars collide at a speed of twenty to thirty miles per hour each, they may move after the impact in almost any conceivable manner, and it cannot be said that any particular movement necessarily and conclusively indicates just how they came together. We think from the physical exhibits that it is more probable that the Plymouth was partially at least on the wrong side of the road, but we may not substitute our judgment as to probabilities for that of the jury. It is only when the conclusion reached by it is physically impossible or reasonably incredible on the evidence that we may set aside the verdict of a jury as contrary to the weight of the evidence.

■ The fourth and fifth propositions of law go to the instructions. The trial court gave some very general instructions of its own motion, which are not questioned, and then read to the jury some twenty instructions requested by plaintiff, and sixteen asked by defendants. The above two propositions are substantially to the effect that these instructions improperly advised the jury as to the law in regard to the *quantum* and character of evidence necessary to sustain the respective theories of plaintiff and defendants as to the issues of the case, and did not properly cover the defense of the contributory negligence of the plaintiff. It is, of course, a fundamental rule in this jurisdiction that instructions are not to be singly and separately considered, but must be taken as a whole, and that it is only when the instructions so considered may be reasonably presumed to have misled the jury as to the proper rule of law to apply to the evidence presented to it that reversible error can be predicated on such instructions.

■■ It is very true that if only the instructions asked for by plaintiff had been given, the issue of contributory negligence would not have been properly submitted to the jury, but all of the instructions asked for by defendants were given by the court, and these, in our opinion, properly advised the jury as to the issues of contributory negligence and ordinary care on the part of the plaintiff. We give jurors credit for a reasonable amount of intelligence and believe that no ordinary juror, taking the instructions as a whole, would think that upon the different issues of the case he was confined solely to the evidence offered by the party who had the affirmative of that issue, and could not, and should not, consider all of the evidence bearing on the issue, regardless of by whom it was offered. After a careful consideration and comparison of the instructions as a whole, we think they very fairly stated the rules of law applicable to the different issues presented. Section 21–1019, Arizona Code 1939, reads, in part, as follows:

" . . . No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

■ If any of the instructions were objectionable on the ground that they were ambiguous or did not fully state the law, defendants had a chance to object thereto before the jury retired to consider its verdict, and while it does appear that general objections were made to some of them, there is nothing in the record to show the particular point objected to nor the grounds of the objection. We are satisfied that no reversible error appears in the instructions.

■ We then come to propositions six and seven, which are that it appears that the damages given were

so excessive as to have been awarded under the influence of passion and prejudice. Here, again, plaintiff admits that if the record shows such to be the fact, a new trial or a remitter should be granted. Her contention, however, is that there is nothing in the record which would justify such a conclusion. She bases her argument on this point on the proposition that passion and prejudice can only appear when (a) improper evidence was admitted upon which the jury might have acted, (b) improper instructions of law were given which might have misled the jury, (c) the argument of counsel was outside the record and of such a nature as might have been calculated to arouse the prejudice of the jury, and (d) there is proof of some misconduct on the part of the jury, and that if none of these matters appear from the record, the court may not set aside a verdict on this ground. Any one of the causes mentioned by plaintiff would be sufficient, of course, to authorize an appellate court to presume passion and prejudice, but we think she has omitted a fifth ground, which is, when the amount of the verdict as compared with the legal damages shown by the evidence is so great as to shock the conscience of the appellate court.

We all know that even when the proceedings at a trial are in strict accordance, so far as the record shows or can show, with every rule of law, that the whole picture presented thereat may be such as to be a most powerful appeal either to the sympathy or the inherent, and usually unconscious, prejudice of the jury. The damages permissible in a case of this nature may be divided legally into three classes, (a) out of pocket expenses for past and prospective medical and other items rendered necessary by the accident, and damage to plaintiff's automobile. These may be calculated with reasonable certainty; (b) loss of earning power by reason of injury, which may be calculated on an evidentiary basis, although not always with the

same certainty as the first class; and (c) pain and suffering, past and prospective. This last, of course, is an item for which no definite rule of estimation may be given and, therefore, a great amount of discretion may, and properly should, be left to the jury. But even here we think there is a limit. It is often said in argument on this point, ''For how much would a man be willing to suffer the same injuries as those which plaintiff has suffered.'' This, of course, is not a proper test of legal damages. No man in his senses would accept any sum to undergo voluntarily the pain and suffering caused by many of the injuries which appear in negligence cases, and yet a verdict for pain and suffering, past and prospective, caused by such an injury might well be so excessive that we would be compelled to state it was based on sympathy for the victim and prejudice against the defendant, rather than a reasonable and dispassionate consideration of the whole situation.

The evidence, taken in the strongest manner in behalf of plaintiff, shows that the direct pecuniary damages, both past and prospective, under (a) amounted to something less than $4,000. There is no evidence in the record showing more than a nominal loss of earning power. Plaintiff at the time of her injury was a housewife, and for some time had to hire help to perform her usual duties. She was not gainfully employed, nor is there any evidence that she expected to be in the reasonably near future. Nor does it appear that her injuries, serious and painful as they undoubtedly were, were of such a nature as to permanently impair her earning power should she at a later period endeavor to secure employment. We must, therefore, assume that even after the remitter required by the trial judge, the jury allowed for the element of pain and suffering alone nearly $40,000.

We have examined our own records, and so far as we have been able to ascertain, the largest judgment for individual personal injuries which has come before this court and was sustained, was $25,000, in the case of *Central Copper Co.* v. *Klefisch,* 34 Ariz. 230, 270 Pac. 629. In that case the evidence showed, although it is not referred to in the opinion rendered by this court, that at the time of the accident plaintiff was gainfully employed and was so badly injured that for the balance of her life she would be a permanent cripple to such an extent as to require a nurse for most, if not all, of the time. See, also, *Brooks* v. *Neer,* 46 Ariz. 144, 47 Pac. (2d) 452. It is true that there have been many verdicts sustained in other states for an amount far greater than that rendered in the present action, but each case must stand upon its own footing, for no two are exactly alike.

Taking into consideration the evidence of the extent and nature of plaintff's injuries and the entire background of the case, we are of the opinion that the very large amount allowed by the jury for the pain and suffering of the plaintiff was the result of sympathy and prejudice, unconscious though it doubtless was on its part, rather than an application of calm judgment and dispassionate reason to the facts of the case.

It is, therefore, ordered that if plaintiff shall within thirty days file a remitter in this court of all of the judgment in excess of $25,000, the judgment will be affirmed. Otherwise, it will be reversed and the case remanded for a new trial.

McALISTER and ROSS, JJ., concur.