258 P.2d 821

**STALLCUP et ux. v. RATHBUN.**

No. 5599.

Supreme Court of Arizona.

June 22, 1953.

Moore & Romley, of Phoenix, for appellants.

Geo. T. Wilson and Minné & Sorenson, of Phoenix, for appellee.

UDALL, Justice.

The parties are before us in the reverse order of their appearance in the trial court, but for convenience reference will be made to them herein as they there appeared, namely as plaintiff and defendants.

The injuries giving rise to the instant suit resulted from a collision between the family car driven by defendant, George Ann Stallcup, and a motorcycle on which the plaintiff, Fred Rathbun, was riding. The motor vehicles were traveling in opposite directions on a busy thoroughfare when Mrs. Stallcup made a left turn in the middle of a block directly in the path of the oncoming motorcycle. The jury by their verdict have re-

solved the question of negligence and proximate cause adversely to the defendants and there is no occasion for us on this limited appeal to review the evidence as to these matters.

Plaintiff suffered a dislocation of the right hip, fracture of the rim of the acetabulum or segment of the hip joint, extensive laceration of the right knee into the knee joint, other lacerations on the right lower leg extending from hip to ankle, a road burn on the right arm, a cut over the left eye and a cut on the left arm. He was immediately hospitalized where he remained for a little over three months. It was necessary to operate on the right hip to remove loose fragments of the rim of the socket and to free the sciatic nerve from sharp impactment. Later an operation on the knee was necessary to repair damage which had occurred under the surface of the knee cap and to the front surface of the lower end of the thigh bone in the joint.

The medical testimony—plaintiff's attending physician, Dr. Geo. A. Williamson, was the only medical expert—showed that there was a possibility that the ball part of the hip joint might later collapse from a failure of the blood supply, or that an arthritic condition might develop, either of which would require further surgery; that it was impossible to determine what the loss of function of his leg would be in the future, not knowing what changes, if any, would occur; that if no further operations became necessary then 25% impairment of the leg

would be a conservative estimate of the permanent loss of function. With such a permanent impairment it was the doctor's opinion that ultimately plaintiff "should be able to do any type of work which does not require too strenuous activity on his feet".

When injured, plaintiff was 22 years old with a life expectancy of 40.7 years, employed as a laborer and equipment operator by the Logan Drilling Company. His earnings had averaged $350 per month for the three months preceding the accident. The loss of earnings and medical expense to date of trial (some seven months after the accident) totaled $5,380.80.

The matter of exemplary damages was withdrawn from the jury's consideration. A unanimous verdict for $45,000 was returned. At the hearing on motion for new trial the court held the amount excessive and denied the motion for new trial upon condition that plaintiff file a remittitur of $15,000, which was done.

The defendants do not here complain of any error occurring during the course of the trial. Their sole assignment of error is:

"The trial court erred in denying defendants' amended motion for a new trial, for the reason that the jury's award of damages was so excessive it could only have been given under the influence of passion and prejudice."

While the notice of appeal includes " * * the judgment as reduced and modified by the remittitur filed by plaintiff on June 1, 1951 * * *", the defendants are not now contending that the judgment for the reduced amount remains excessive or that it could be corrected by a further decrease by this court under the provisions of Section 21–1833, A.C.A.1939. See, Jacob v. Miner, 67 Ariz. 109, 122, 191 P.2d 734. The defendants have thereby narrowed this appeal to the correctness of the trial court's order denying their motion for a new trial, asserting that passion and prejudice as indicated from the jury's large verdict entitled them to this. Sec. 21–1301, A.C.A.1939.

■ If in truth and fact this record discloses passion and prejudice upon the part of the jury in arriving at their verdict (which might affect liability as well as cause liberality), then we agree with defendants' position that a new trial should be granted. Justice Sloan, speaking for this court in the case of Southern Pacific Co. v. Tomlinson, 1893, 4 Ariz. 126, 33 P. 710, 711, laid down the correct rule:

"* * * Of course, if it is apparent to the trial court that the verdict was the result of passion or prejudice, a remittitur should not be allowed, but the verdict should be set aside. * *"

In keeping with this holding see the opinions in the case of Perazzo v. Ortega, 29 Ariz. 334, 241 P. 518; Id., 32 Ariz. 154, 256 P. 503; and the restatement of this principle in Miller v. Condon, 66 Ariz. 34, 182 P.2d 105, 109:

"* * * If it appears manifest that *the jury were actuated by prejudice or passion its verdict may not stand;* but an exaggerated measurement of damages in a field in which the ideas of reasonable men may differ does not of itself lead to the conclusion that the verdict was based upon motives improper for the jury to entertain. * * *" (Emphasis supplied.)

It would appear that this court inadvertently failed to properly differentiate between a verdict influenced by passion and prejudice and one that is merely excessive in the decisions rendered in: Standard Oil Co. v. Shields, 58 Ariz. 239, 119 P.2d 116; Jacob v. Miner, supra; Alabam Freight Lines v. Thevenot (both majority and minority opinions), 68 Ariz. 260, 204 P.2d 1050; Horn v. Ruess, 72 Ariz. 132, 231 P.2d 756.

To establish passion and prejudice the defendants rely upon, first, the fact that only thirty-four minutes elapsed from the time the jury retired to deliberate and their return into court with a verdict. Here, the issues were not involved. There was no conflict in either the medical testimony as to the nature of the injuries or the past earning power of the plaintiff. The diminution of future earnings was, of course, a matter for estimation. It appears that this is one of those cases, not infrequently encountered, when the jurors find themselves in immediate accord, both as to liability and the amount of damages to be allowed. No authorities are cited, and we have been unable to find any, holding that passion and prejudice may be presumed from these facts. Secondly, the defendants urge that "the amount of the verdict is so great as to shock the conscience of the appellate court". A flagrantly outrageous verdict was declared by this court in Standard Oil Co. v. Shields, supra, to be a fifth ground upon which to predicate a finding of passion and prejudice. But the yardstick to be applied in determining whether such a condition exists is found in the case of United Verde Copper Co. v. Wiley, 20 Ariz. 525, 183 P. 737, 738, wherein Justice Ross quoted the following rule laid down by Chancellor Kent in Coleman v. Southwick, 9 Johns, N.Y., 45, 6 Am.Dec. 253:

"* * * 'The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have no standard by which to ascertain the excess.' "

The ultimate question presented, therefore, is whether the verdict rendered, as compared with legal damages shown is so unreasonable and outrageous as to shock the conscience of this court? Our answer to this query is in the negative. We are

impelled to the conclusion that the verdict was not the result of passion or prejudice on the part of the jury but rather an exaggerated measurement of damages. While the verdict is large, it is not, in our opinion, shocking or flagrantly outrageous when one considers the decreased value of the dollar, the substantial amount of special damages including loss of earnings during the period of plaintiff's incapacity, the injuries received, the pain and suffering endured and doubtless to be suffered in the future, the permanency of injury to the leg, the uncertainty as to his future well-being as a result of his injuries coupled with a serious diminution of earning power over the period of a long life expectancy.

Judgment affirmed.

STANFORD, C. J., and PHELPS, LA PRADE and WINDES, JJ., concur.