426 P.2d 659

Sanford ALLEN and Delores Allen, husband and wife, d/b/a Tucson Motor Service Company, and William Carl Miles and Ruby Miles, husband and wife, Appellants,

v.

Marian DEVEREAUX, Appellee.

No. 2 CA–CIV 272.

Court of Appeals of Arizona.

April 13, 1967.

Holesapple, Conner, Jones, McFall & Johnson, by Harrison G. Dickey, Tucson, for appellants.

Martin H. Schulman, Tucson, for appellee.

KRUCKER, Judge.

The appellee was the plaintiff in a superior court action to recover damages

from the defendants-appellants for injuries sustained by her as a consequence of being struck by a truck owned by the defendant Motor Service Company and operated by defendant William Miles, an employee of said company. Defendants admitted liability, and the sole issue tried to the court without a jury, was the amount of damages, if any, incurred by the plaintiff. Judgment was entered in favor of the plaintiff in the sum of $29,204.00; whereupon the defendants moved for a new trial, or in the alternative, a remittitur. These post-judgment motions were subsequently denied, and this appeal followed.

The accident which gave rise to this lawsuit occurred on November 26, 1963, while the plaintiff was crossing East Broadway, Tucson, at a street intersection. The plaintiff, upon being struck by the defendants' truck, was propelled some eight feet into the air and landed on her back. Both the back of her head and her back hit the pavement. Measurements taken by the investigating police officer at the scene of the accident indicated that the plaintiff landed approximately ten feet from the point of impact. A witness at the scene heard the plaintiff moaning and groaning. Plaintiff was transported by ambulance to Tucson Medical Center, where she was examined by an orthopedic physician and later by her personal physician. The diagnosis was multiple injuries with contusions and abrasions in the scalp; brain concussion; contusion of the right elbow; contusions and abrasions of the left elbow, left shoulder and left wrist; and multiple sprains involving the lumbosacral and other areas of the body.

During her three-weeks' stay in the hospital, the plaintiff had persistent dizziness and headaches. After many months, the dizziness subsided, but the headaches consistently recurred and were treated with various medications. Another persistent complaint was pain in the lower back region which required daily medication to alleviate the discomfort. At the time of trial, two years after the accident, the plaintiff was still suffering from low back pain and headaches. The plaintiff, who had worked as a housekeeper for a Tucson family for some eighteen years, was unable to return to work until January 1964. When she finally did return to her job, she was unable to perform many of the tasks previously done by her with ease. In addition, she was forced to hire her sister to work one day a week to do certain heavy chores, paying the sister out of her own salary of $45.00 a week.

During the two-year period after her return to work, the plaintiff's pain and discomfort caused her to stay home from work on various occasions ranging from three days to three weeks in duration. In addition, the plaintiff was forced to give up her church-affiliated activities and needed assistance from her family with her own housekeeping chores.

Several lay witnesses testified with regard to the marked change in plaintiff and her continued manifestations of physical debilitation and discomfort after the accident. She was treated by three physicians during the post-accident period, all of whom testified at the trial. Her family physician was of the opinion as to the permanency of the headaches:

"Permanent is a long time, but I think that not having shown any signs of improvement, I think that you would have to concede up to two years, these are long-standing and might possibly be permanent, yes."

As to the permanency of the back pain:

"I think the same thing might be stated, that they probably would be."

The orthopedic physician's prognosis with regard to the permanency of the plaintiff's back condition was:

"I think that she will have some degree of low back symptoms, particularly aggravated when she does her heavy work. I would say these symptoms to one degree or another will be permanent."

And when asked about the reasonable certainty of the plaintiff's continuing to suffer pain in the low back area:

"I would say with one exception, that probably is her weight,[1] I would say that the likelihood of her losing much weight is pretty small, I would say from experience people overweight, assuming she did not lose a considerable amount of weight, I would say that there is a probability she will have pain or symptoms to one degree or another off and on permanently."

The neurologist testified that his examination of the plaintiff's cervical spine revealed a slight limitation of motion especially on hyper-extension and rotation. As to his examination of her lower back, he found some straightening of the normal curvature which should be present in the low back, and he felt there was a considerable amount of limitation of the normal bend that the lumbar spine should exhibit for bending.

He was of the opinion that the plaintiff's headaches were caused by the combination of the neck sprain and concussion which resulted from the accident. As to his opinion concerning the permanency of the headaches and low back difficulty, the neurologist testified that he felt they were probably permanent due to the fact of their persistence for two years without appreciable improvement. He further testified:

"Q   Doctor, is there such a thing as mental pain?

"A   There is what we call psychogenic pain, which is a pain of which the individual feels and for which the physician is unable to demonstrate a cause.

"Q   Did you have an opinion based on the examination, the neurological examination, as to whether or not Mrs. Devereaux's pains were real with reference to her head pains?

"A   Yes, I felt that her pains were organic in origin, yes.

\*     \*     \*     \*     \*     \*

"Q   Doctor, are subjective symptoms a necessary finding for a neurological diagnosis?

"A   They follow a well known organic pattern, they can be sufficient, there are diseases for which there is no organic cause.

"Q   Can you state with certainty whether or not what Mrs. Devereaux's complaints of headaches are due to?

"A   Historically, they are due to the accident of December, 1963."

The medical witnesses all agreed that the plaintiff would continue to require symptomatic medication in the future and a minimum amount of medical supervision.

■   It is the defendants' position on appeal that the damages awarded by the trial court were excessive and not justified by the evidence. The damages recoverable in a case such as this are divided into three classes: (a) out-of-pocket expenses for past and prospective medical and other items rendered necessary by the accident; (b) loss of earning power by reason of the injury; and (c) pain and suffering, past and prospective. Standard Oil Co. v. Shields, 58 Ariz. 239, 119 P.2d 116 (1941). As pointed out in the *Standard Oil Co.* case, supra, at page 247, 119 P.2d at page 119 class (a) may be calculated with reasonable certainty, class (b) may be calculated on an evidentiary basis, although not with the same certainty, and class (c) has no definite rule of estimation which might apply, although there is a limitation on the fact-finder's exercise of discretion:

"It is often said in argument on this point, 'For how much would a man be willing to suffer the same injuries as those which plaintiff has suffered.' This, of course, is not a proper test of legal damages. No man in his senses would accept any sum to undergo voluntarily the pain and suffering caused by many of the injuries which appear in negligence cases, and yet a verdict for pain and suffering, past and prospective, caused by such an injury

---

1.   The plaintiff's weight both prior and subsequent to the accident exceeded 200 pounds.

might well be so excessive that we would be compelled to state it was based on sympathy for the victim and prejudice against the defendant, rather than a reasonable and dispassionate consideration of the whole situation."

The plaintiff's medical expenses at the time of trial approximated $1,500.00. She had lost her wages of $45.00 per week from November 26, 1963, to January 24, 1964. From the latter date, she lost earnings in the amount of $5.50 per week the amount paid to her sister to perform certain heavy work duties entailed in her housekeeping job. For the period of 23 months prior to the trial, the approximate amount expended for payment to plaintiff's sister exceeded $500.00. Additionally, the evidence discloses that plaintiff intermittently lost time from work because of her injury, for which she received no compensation. Her out-of-pocket losses, therefore, at the time of trial, could reasonably be calculated to be in the vicinity of $2,500.00.

The evidence, taken in the strongest manner in behalf of the plaintiff, shows that her earning power would continue to be impaired because of the persistent, recurring headaches and the low back pain which prevented her from doing heavy work. The medical prognosis was substantially to the effect that these conditions would remain permanent, necessitating medication and a minimal amount of medical attention. The plaintiff was 57 years old and had a life expectancy of 22.03 years. It would appear that the trial court awarded damages in the amount of approximately $27,000.00 for impairment of earning power and pain and suffering, past and prospective.

In this jurisdiction, as both parties agree, we are committed to the rule of "reasonable certainty". In other words, damages for future pain and suffering must be reasonably certain and cannot be predicated upon conjecture and speculation. Coppinger v. Broderick, 37 Ariz. 473, 295 P. 780, 81 A.L.R. 419 (1931). However, as the court pointed out in *Coppinger*, reason-able certainty of pain and suffering in the future is about the same as " 'pain and suffering which she in all probability may endure in the future.' " (37 Ariz. at 477, 295 P. at 781.) The medical expert witnesses, whose credibility was for the trial judge to determine, testified that the plaintiff's headaches and backaches were probably permanent, and that she would continue to experience pain and suffering in the future. The extent to which her back would trouble her would depend upon the type of work activities she engaged in. We believe there was sufficient evidence to justify the inclusion of future pain and suffering and impairment of earning capacity as elements of plaintiff's damages.

The defendants attempt to minimize the plaintiff's complaints, although they make no claim that she is a malingerer, by attributing them to her obesity. However, her weight at the time of the accident was slightly more than it was subsequently, and did not interfere with her working ability or otherwise. A tort-feasor takes his victim as he finds him and cannot excuse himself by saying it's the plaintiff's fault that he is suffering because he won't try to lose some weight. In fact, there was medical testimony to the effect that a weight-reducing program might be inadvisable.

We next address ourselves to the question of whether the damages were excessive. It is well settled in Arizona that the test for excessiveness is whether the amount of the verdict is so great as to shock the conscience of the appellate court. Young Candy & Tobacco Company v. Montoya, 91 Ariz. 363, 372 P.2d 703 (1962); Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821 (1953); Tanner v. Pacioni, 3 Ariz.App. 297, 413 P.2d 863 (1966).

Defendants have cited numerous cases to us in which appellate courts have reduced the size of the judgment, while plaintiff has presented considerable authority to the contrary. However, each case must stand on its own footing, for no two are exactly alike. We cannot say that the judgment rendered here is so outrageous as

to shock our conscience. As the court stated in a footnote in Harvey v. Wight, 68 Wash.Dec.2d 185, 412 P.2d 335 (1966):

"It is only fair to note that it may 'shake' some of us, but it does not 'shock' us."

We adhere to the following statement made by this court in Moore v. Gray, 3 Ariz.App. 309, 313, 414 P.2d 158, 162 (1966):

"The trial court has a better opportunity to judge the severity of a plaintiff's injury than an appellate court, reviewing a cold record. Any indication in the record before us that the amount awarded * * * was over-generous is not so cogent and clearly apparent as to cause us to override the judgment of the trial court."

Finding no merit to defendants' claim that either a new trial be had or the judgment reduced, the judgment is hereby affirmed.

HATHAWAY, C. J., and MOLLOY, J., concur.