447 P.2d 254

**Isabelle S. SCHWARTZ, Appellant,**

**v.**

**Morris SCHWARTZ, Appellee.**

**No. 9338–PR.**

Supreme Court of Arizona.

In Banc.

Nov. 20, 1968.

Harrison, Strick & Myers, by Mark I. Harrison, Langerman, Begam & Lewis, Phoenix, for appellant.

Gust, Rosenfeld & Divelbess, by Richard A. Segal, Phoenix, for appellee.

Kreindler & Kreindler, by Lee S. Kreindler, New York City, Boyle, Bilby, Thompson & Shoenhair, by Marvin S. Cohen, Miller, Pitt & Feldman, Tucson, for amicus curiae Robert F. Miller and others.

LOCKWOOD, Justice:

The parties to this appeal have agreed that the facts are as follows: Plaintiff Isabelle S. Schwartz is the wife of defendant Morris Schwartz. They have been married for many years and have lived as man and wife in the State of New York continuously since the inception of their marriage. In the winter of 1964, they came to Arizona for a brief vacation. On December 5, 1964, while Mr. Schwartz was driving a rented automobile on 12th Street near Tuckey Lane in Phoenix, with Mrs. Schwartz as his only passenger, the car was involved in an accident with an automobile operated by defendant Jurgan Blank, a minor.

Mrs. Schwartz was injured in the accident and thereafter filed suit against her husband, Jurgan Blank, and Blank's parents alleging that they were jointly and severally liable for her injuries. Morris Schwartz then moved to dismiss his wife's complaint on the ground that it failed to state a claim on which relief could be granted. This order dismissing the complaint was affirmed by the Arizona Court of Appeals, Division I, 7 Ariz.App. 445, 440 P.2d 326 (1968), and we granted Isabelle Schwartz's petition to review their decision.

The principal issue presented by petitioner is whether her capacity to sue her husband, Morris Schwartz, in tort, should be determined by the law of New York, the domicile of the Schwartzes or by the law of Arizona, the place of the injury. Arizona has adhered to the common law position that interspousal tort suits are not permitted. New York, on the other hand, in 1964 enacted a statute which provided for tort suits between husband and wife. (General Obligation Law McKinney's Consol. Laws, c. 24–A § 3–313). The disposition of this petition therefore turns on a choice between conflicting laws: New York law which would allow Mrs. Schwartz to maintain this tort suit against her husband, and Arizona law which would deny her the capacity to bring this suit.

Had this issue arisen in the very recent past the response of the overwhelming majority of American courts would have been automatic: since the accident occurred in Arizona its law must be applied to all substantive aspects of the case. Enshrined in the Restatement of Conflict of Laws, this theory of lex loci delicti has provided a choice of law rule in tort cases thoughout the United States for nearly three decades. However, of late, the assaults on the citadel of lex loci have occurred with increasing frequency. The status of the old lex loci rule is succinctly described in Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966):

> "That old rule is today almost completely discredited as an unvarying guide to choice of law decision in all tort cases * * *. No conflict of laws authority in America today agrees that the old rule should be retained. * * * No American court which has felt free to re-examine the matter thoroughly in the last decade has chosen to retain the old rule. * * * It is true that some courts, even in recent decisions, have retained it. * * * But their failure to reject it has resulted from an unwillingness to abandon established precedent * * * not to any belief that the old rule was a good one." 222 A.2d at 207.

This movement away from lex loci culminated in 1968 in its rejection by the Restatement (Second) of Conflict of Laws. While the majority of jurisdictions have yet to repudiate the lex loci deliciti rule, we feel that the recent, better-reasoned decisions evidence the trend away from its application. Accordingly, we must turn elsewhere to solve the choice of law problem presented by the instant case.

Three new theories have been advanced by the courts and the commentators that have broken with the old rule. The first, created specifically to deal with the problem of intra-family tort actions, substitutes a rule of lex loci domicilii for the rule of lex loci delicti. Such an approach to the

problem was first set forth in Emery v. Emery, 45 Cal.2d 421, 289 P.2d 218 (1955). Here the injury occurred in Idaho, a jurisdiction which forbade intra-family tort actions, and the family was domiciled in California, a state permitting such suits. In holding that California law should be applied, Justice Traynor wrote:

> "We think that disabilities to sue and immunities from suit because of a family relationship are more properly determined by reference to the law of the state of the family domicile. That state has the primary responsibility for establishing and regulating the incidents of the family relationship * * *." 289 P.2d at 223.

This lex domicilii rule, as applied to tort suits between husband and wife, has received its clearest exposition in a line of Wisconsin cases. The leading case is Haumschild v. Continental Casualty Co., 7 Wis.2d 130, 95 N.W.2d 814 (1959). See also Haynie v. Hanson, 16 Wis.2d 299, 114 N.W.2d 443 (1962) and Pirc v. Kortebein, 186 F.Supp. 621 (Wis.1960). Other jurisdictions giving some support to this rule include Alaska, Minnesota, and New Jersey.[1]

A second approach to the problem is found in the theory of "governmental interest" or "interest analysis". Propounded by Professors David Cavers and Brainerd Currie, this theory holds that the forum court must apply its own law unless another jurisdiction has a greater "interest" in having its law applied.

> "A state is interested in applying its law to a suit when policies underlying that law would be furthered. Policies underlying a law, in turn, are furthered when that law is applied to the factual contexts which it was intended to resolve * * *. A state is interested in applying its law to a particular case when it can be said that the law was designed to encompass the facts of just such a case." "False Conflicts" 55 Cal.L.Rev. 74, 80 (1967).

In the context of the instant case Arizona would not have an "interest" in applying its law (interspousal tort immunity) unless it could be said that this law was intended to apply to New York as well as Arizona spouses.

While no court in this country has utilized this theory as the sole basis for its resolution of a choice-of-law problem, some courts have adopted its rhetoric in their conflict of laws decisions. Six jurisdictions—California, New Hampshire, New Jersey, New York, Pennsylvania and Wisconsin—have employed the interest analysis approach in recent cases.[2]

The third theory which merits our consideration is variously termed the "contacts theory", the "grouping of contacts", or the "center of gravity". When the Restatement discarded lex loci delicti as the choice of law rule in multi-state tort cases, they accepted the contacts theory in its place:

§ 379 The General Principle

> "(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.

1. Armstrong v. Armstrong, Alaska, 441 P. 2d 699 (1968); Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66 (1966); Koplik v. C. P. Trucking Corporation, 27 N.J. 1, 141 A.2d 34 (1958).

2. Reich v. Purcell, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), (limitation on wrongful death recovery); Clark, supra, (guest statute); Thompson v. Thompson, 105 N.H. 86, 193 A.2d 439, 96 A.L.R.2d 969 (1963), (interspousal tort immunity); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967), (guest statute); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963), (guest statute); McSwain v. McSwain, 420 Pa. 86, 215 A.2d 677 (1966), (interspousal tort immunity); Kuchinic v. McCrory, 422 Pa. 620, 222 A.2d 897 (1966), (guest statute); Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965), (guest statute).

"(2) Important contacts that the forum will consider in determining the state of most significant relationship include:

"(a) the place where the injury occurred,

"(b) the place where the conduct occurred,

"(c) the domicile, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states." Restatement (Second) Conflict of Laws § 379 (1968).

A court in applying this theory must ascertain which of the states involved has the most significant contacts with the subject matter of the suit. In making this examination the forum court should consider the factors set forth in § 379 plus any other contacts which can be said to be of significance in connecting the occurrence and the parties with any of the states involved. The court's determination of most significant relationship must consist of more than a mere counting of contacts.

"On the basis of the Babcock case it may be assumed that 'grouping of contacts' does not mean mere counting of contacts, that qualitative rather than quantitative evaluation determine 'the most significant relationship'. Qualitative evaluation is inevitably in terms of policies and interests (of the states involved) * * *." Leflar, Comments on

Babcock v. Jackson, 63 Col.L.Rev. 1219, 1248 (1963).

Although the courts which have rejected the old system of lex loci have been somewhat hesitant about complete acceptance of the interest analysis theory, there has been much less reticence in regard to the contacts theory. Twelve decisions in six jurisdictions have applied the Restatement (Second) approach specifically to the intra-family immunity and host-guest situations.[3] (The contacts approach has also enjoyed wide acceptance in other multi-state tort and contract controversies.)

██ Cognizant of the fact that we are charting paths through a developing area of the law, we have felt it necessary to make the foregoing extensive examination of the competing choice-of-law theories. We believe that of the three, the contacts theory offers the brightest prospects for a rational yet flexible approach to choice-of-law problems. Accordingly we adopt the contacts theory, as embodied in the Restatement (Second) of Conflict of Laws as the rule for Arizona.

██ Applying the contacts theory to the instant case, we hold that the question of interspousal tort immunity must be governed by the law of New York, not the law of Arizona. Of the four "significant contacts" set forth in § 379, Restatement (Second) of Conflict of Laws, supra, two attach to Arizona (place of injury, place of conduct) and two attach to New York (domicile of the parties, place where relationship of the parties is centered). While New York and Arizona possess the same number of contacts, the determination of which state has the most significant contacts is primarily qualitative, not quantitative. To aid in this evaluation the writers of the Restatement have provided that in

3. Illinois—Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544 (1966); Iowa—Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965); Kentucky—Wessling v. Paris, 417 S.W.2d 259 (Ky.1967); Minnesota—Balts, supra; Kopp v. Rechtzigel, 273 Minn. 441, 141 N.W.2d 526 (1966); Schmidt v. Driscoll Hotel, 249 Minn. 376, 82 N.W.2d 365 (1957); New York—Kjeldsen v. Ballard, 52 Misc.2d 952, 277 N.Y.S.2d 324 (1967); Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966); Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965); Babcock, supra; Wisconsin—Wilcox, supra; Magid v. Decker, 251 F.Supp. 955 (Wis.1966).

**566**

regard to intra-family tort immunity the contact of the parties' domicile shall receive the most weight:

§ 390 g. Intra-Family Immunity

"In accordance with the rule of § 379 whether one member of a family is immune from tort liability to another member of the family is determined by the local law of the state of their domicile.

"Comment:

"A. Rationale. The rule of this Section is an application of the rule of § 379. In this situation, however, it is possible to make a more definite statement as to the governing law than in the case of other issues." Restatement (Second) of Conflict of Laws § 390 g (1968).

With domicile to be given the greatest weight, the determination as to which state has the most significant contacts with the issue of interspousal tort suits becomes evident. New York law, giving Mrs. Schwartz the capacity to sue her husband in tort, should be applied.

Our holding that New York law should govern the issue of interspousal suits does not mean that Arizona law may not be applied to other issues of the case,

e. g. determination of negligence. In Wilcox, supra, the practice of applying one state's law to one aspect of the case while applying the law of another state to another aspect was specifically approved:

"It is obvious that one state may have a legitimate concern with one facet or issue of the case, but not with another, and hence we conclude that it is not necessary in each case to apply only the law of a single state to all phases of the lawsuit, i. e., what is negligence, for example, may well involve the application of the rules of the road of the tort state since it is that state that is primarily concerned with safety on its highways." 133 N.W.2d at 415.

See also Babcock, supra, 191 N.E.2d at 285; Thompson, supra, 193 A.2d at 441.

The judgment of the Court of Appeals is vacated, and the case is remanded to the Superior Court for reinstatement of the case, and for proceedings not inconsistent with this opinion.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.