529 P.2d 716

**J. William MOORE, Administrator of the Estate of Alejandro Tovar, Deceased, Appellant,**

**v.**

**Maria Eliza MONTES and Ernesto Montes, her husband, Appellees.**

**No. I CA–CIV 2218.**

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 17, 1974.

Rehearing Denied Jan. 13, 1975.

Review Denied Feb. 11, 1975.

Jennings, Strouss & Salmon by William T. Birmingham, M. Byron Lewis, Phoenix, for appellant.

Rawlins, Ellis, Burrus & Kiewit by Norman D. Hall, Jr., Michael V. Mulchay, Phoenix, for appellees.

## OPINION

NELSON, Judge.

This is an appeal from a judgment entered by the trial court, sitting without a jury, awarding the sum of $25,000 as damages for personal injuries received in a one-vehicle accident approximately 58 miles south of the Arizona Border in Mexico by the appellees, Maria Eliza Montes and Ernesto Montes, husband and wife (Monteses). The judgment was entered against appellant, J. William Moore (Moore), in his capacity as the administrator of the estate of Alejandro Tovar (Tovar), the driver of the car involved in the accident who died of injuries as a result thereof.

Except for the testimony of two expert witnesses who presented some differing points of view on aspects of Mexican law as it might be applied to the facts of this case (See APPLICABLE LAW, infra), the matter was decided by the trial court on stipulated facts. There were two central questions presented to the trial court for decision which must also be resolved here. Initially, we must decide whether there is jurisdiction in the courts of Arizona to resolve this matter, both as to the establishment of Tovar's estate, for purposes of administration, and the awarding of a judgment against the estate and in favor of Montes. Secondly, if there is jurisdiction in the Arizona courts, should the substantive law of Arizona or that of Sonora, Mexico, be applied? The trial court found adequate jurisdiction both to establish an administration of Tovar's estate in Arizona and to allow the suit for personal injuries against that estate, to the extent of the value of its lone asset, a $25,000 policy of insurance; and it applied Arizona law. We affirm the trial court's decision.

## FACTS

On February 8, 1970, a single-car accident occurred in the state of Sonora, Mexico, approximately 58 miles south of the United States-Mexican Border. Alejandro Tovar, who was driving the car at the request of Ernesto Montes, was killed in the accident and Maria Eliza Montes was severely injured.

The trip originated in Somerton, Arizona, where the Monteses lived and where the car was regularly garaged. The car was licensed in Arizona and was covered by an insurance policy purchased by Maria Eliza Montes from a company licensed to do business in Arizona, but not in Mexico. The policy provided coverage for trips into Mexico for a distance up to 75 miles from the Border. The car was owned by Maria's mother, Mrs. Guadalupe Garcia Garibaz.

The purpose of this particular trip was for a one-day picnic at the Gulf of California. Prior to entering Mexico, the Monteses picked up three passengers, all residents of the United States. In San Luis, Mexico, they picked up Tovar, a

resident and citizen of Mexico. They stopped to buy beer on the way and had begun to drink it prior to the accident. Tovar had consumed one can and was in the process of drinking another when the accident occurred. He lost control of the car on a curve while traveling at a high rate of speed, and the car overturned.

In May of 1971, a petition for letters of administration in the matter of the estate of Alejandro Tovar was filed in the Superior Court in Maricopa County, Arizona. The petition showed on its face that Tovar was a resident of San Luis, Mexico, at the time of his death. The petition alleged that Tovar left an estate in Phoenix, Arizona, consisting of rights as a named insured under an automobile liability insurance policy issued to Maria Eliza Garcia (Montes), appellee here. The policy in question was in force at the time of the accident, provided coverage within 75 miles of the United States Border, and contained an omnibus clause which covered permissive users of the automobile.

Maria Eliza Montes filed a request for the appointment of administrator in the probate proceeding, alleging that she was a creditor of the deceased entitled to letters of administration, and that she was physically unable to undertake administration of the estate. Pursuant to her request, letters were issued to Moore in June of 1971.

In September of 1971, Montes sued Moore as administrator of the estate of Alejandro Tovar, deceased, to recover for personal injuries received in the accident on February 8, 1970. Although the complaint sought damages of $500,000, the parties stipulated that the maximum amount of recovery, if any, would be limited to the face amount of the insurance policy in question, which was $25,000 for injury to any one person.

Moore sought, without success, to have the cause dismissed on jurisdictional grounds in the trial court, this court by special action (1 CA-CIV 1901), and in the Supreme Court (10803-PR denied March 28, 1972). A review of all these proceedings indicates clearly that the jurisdictional question has been preserved and is now ripe for decision.

## JURISDICTION

This court's decision in Ray v. Sommer, 14 Ariz.App. 160, 481 P.2d 530 (1971), has been cited to this court by both parties as highly persuasive authority in this case. We agree.

 While the court in *Ray,* supra, upheld the trial court's dismissal of an automobile accident case where there were literally no contacts with the state of Arizona, the decision clearly points toward the acceptance of the almost unanimous view that a liability insurance policy will support letters of administration as to a nonresident in a state in which the insurance carrier, such as here, is licensed to do business, and where there are other significant contacts with the accident in question, as there are here. Ray v. Sommer, supra. We accordingly hold that where the plaintiff is a resident of Arizona and the insurance policy alleged to be an asset of the decedent's estate was purchased in Arizona from a company authorized to do business in Arizona, there exists a sufficient nexus with the state of Arizona to justify the administration of the decedent's estate for the limited purpose of establishing whether or not the plaintiff has a claim against this one asset, and, if such a claim is established, for collecting that claim. Clearly no more is possible and no more is contemplated.

 The real party in interest here is not so much the estate of the decedent, Tovar, as it is the insurance carrier which is liable to exonerate a claim against Tovar's estate as a result of its policy of insurance covering him as a permissive driver of the car involved in the accident. The action is essentially in rem, A.R.S. § 14–302 [1], and can be maintained against the administrator of the estate of the deceased tort-

---

[1]. Laws 1956, Ch. 129. Repealed by Laws 1973, Ch. 75, § 3. Now see A.R.S. § 14–1301(2) (Laws 1973, Ch. 75, § 4).

feasor, A.R.S. § 14-477[2], to the extent of that estate found in Arizona. A.R.S. § 1-302[3]; In re Fagin's Estate, 246 Iowa 496, 66 N.W.2d 920 (1954). Although the decision in In re Fagin's Estate, supra, is some 20 years old, and the factual posture of the case somewhat different, the language of the Iowa court is very timely today:

> "Finally, it should be remembered that proceedings such as are involved here, seeking the appointment of administrators, are not adversary nor personal. They are special proceedings in rem [citations omitted]. The legality of the appointment is not dependent upon acquiring personal jurisdiction of any nonresident by personal or substituted service.
>
> \* \* \* \* \* \*
>
> "The Iowa administrator has jurisdiction only of whatever property of the estate may be in Iowa. If it shall develop there is none, or that Pilger's have no enforceable claims, decedent's general estate represented by appellant will have suffered no loss. Nor will appellant and the estate he represents suffer any damage if the Pilger claims be established. *Appellee (Iowa Administrator) will have recourse only against the Iowa property, viz., whatever insurance coverage decedent carried on his automobile subject to such claims. No one claims any other property is threatened.*
>
> "In ultimate effect appellant is not the real party in interest. The real party is the insurance company . . . ."

66 N.W.2d at 924. (emphasis added) Certainly the claim against a decedent's estate does not have to be fully liquidated or proven before a creditor can seek administration. Cf. A.R.S. § 14-3803(C)(2)[4]. The administrator, as well as the probate court, has a responsibility to approve only

valid claims. See Cox v. Mackenzie, 70 Ariz. 308, 219 P.2d 1048 (1950). The claim herein was denied and then fully litigated by the real parties in interest. The trial court had jurisdiction both as to the establishment of the estate and as to the claim in question. Ray v. Sommer, supra; In re Fagin's Estate, supra.

## APPLICABLE LAW

■ The applicable conflict of laws principles were enunciated and adopted by the Arizona Supreme Court in Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254, 29 A.L.R.3d 623 (1968). In adopting the contacts theory enunciated by the Restatement, Second, Conflict of Laws § 145 (renumbered from § 379 in tentative draft No. 9, as cited in *Schwartz,* supra, and as finally adopted on May 23, 1969, Restatement, Second, Conflict of Laws, appendix, page XLIII) our court made these sage comments after a full exposition of all the theories concerning choice of laws:

> *"Cognizant of the fact that we are charting paths through a developing area of the law,* we have felt it necessary to make the foregoing extensive examination of the competing choice-of-law theories. We believe that of the three, *the contacts theory offers the brightest prospects for a rational yet flexible approach to choice-of-law problems."* 103 Ariz. at 565, 447 P.2d at 257 (emphasis added).

The developing nature of the law is underscored by the adjustments made to § 379, cited in *Schwartz,* supra, between the date of that case, November 20, 1968, and the date of the final adoption of the section, which was numbered § 145, in the final product:

> "§ 145. The General Principle[5]
>
> "(1) The rights and liabilities of the parties with respect to an issue in Tort

---

2. Laws 1956, Ch. 129. Renumbered as A.R.S. § 14-3110 by Laws 1973, Ch. 75, § 17.

3. See n. 1 infra.

4. Laws 1973, Ch. 75, § 4. See also A.R.S. § 14-561 et seq., Laws 1956, Ch. 129 (repealed by Laws 1973, Ch. 75, § 3).

5. This section was cited in *Schwartz,* supra, at page 564 of 103 Ariz., at pages 256-257 of 447 P.2d:

> "§ 379. The General Principle
>
> '(1) The local law of the state which has

are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement, Second, Conflict of Laws § 145 (1971).

Having adopted the theory enunciated in § 145, *Schwartz,* supra, § 6 of the Restatement, Second, Conflict of Laws, becomes important:

"§ 6. Choice-of-Law Principles

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests

of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied." Restatement, Second, Conflict of Laws § 6.

Since we have found no statute governing the choice of law in this case, we have applied in principles of *Schwartz,* supra, and §§ 145 and 6 of the Restatement, Second, Conflict of Laws.

■ *Schwartz,* supra, and the authorities cited therein, clearly indicate that it is a qualitative, not quantitative, analysis of the contacts which is crucial to the resolution of the choice-of-law question.

■ The trip began and was to end in Arizona; the surviving passengers in the car all live in Arizona; the significant medical treatment and evaluation all occurred in Arizona; the insurance was procured in Arizona under premium charges calculated in Arizona to cover short trips into Mexico; the burden of caring for the injured plaintiff, if no other resources are available, will fall upon the state of Arizona. The only significant contact with Mexico is the clearly fortuitous circumstance that the accident occurred in Mexico with a Mexican citizen and resident at the wheel.

The only relevant policy of the country of Mexico which could reasonably be considered in this fact situation is that policy

the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.

'(2) Important contacts that the forum will consider in determining the state of most significant relationship include:

'(a) the place where the injury occurred,

'(d) the place where the relationship, if any,

'(c) the domicile, nationality, place of incorporation and place of business of the parties, and

'(d) the place where the relationship, if any, between the parties is centered.

'(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states.' Restatement (Second) Conflict of Laws § 379 (1968)."

underpinning its laws designed to insure safe driving on its highways. In that general context two areas of its motor vehicle law are pertinent: driving without a valid license or operator's permit and driving while under the influence of alcohol.

We have carefully reviewed the testimony of the experts taken in the trial court, the authorities cited there, and the laws and decisions in Arizona on these subjects. Our evaluation of the relevant policies of the country of Mexico *vis-a-vis* those of Arizona has also been greatly facilitated by a particularly cogent law review article which was inspired by the *Schwartz* decision, supra. See Jon R. Cooper, Choice of Law in Arizona: Schwartz v. Schwartz, Something Old, Something New, Something Borrowed . . ., 11 Ariz.L.Rev. 275 (1969). We fail to find any significant degree of differing emphasis by either jurisdiction regarding the licensing of drivers and the concern for the drinking driver which would indicate a need to defer to the law of Mexico on those points. Both jurisdictions prohibit driving without a valid license and driving under the influence of alcohol; both jurisdictions provide severe criminal sanctions for so driving; both jurisdictions provide for consideration of these factors, although in varying procedural and substantive degrees, in civil cases arising out of such alleged conduct.

To apply Mexican law in cases such as this one, in view of the similar purpose of Arizona law in the same area, would have no significant impact upon highway safety in Mexico, yet it could defeat or make unduly cumbersome the recovery of just compensation for injuries incurred by Arizona residents in such accidents, and otherwise potentially compensable in both jurisdictions. Schwartz v. Schwartz, supra; Restatement, Second, Conflict of Laws §§ 6 and 145. See also: Chance v. E. I. DuPont DeNemours & Company, Inc., 371 F.Supp. 439, 443–448 (E.D. of N.Y., 1974); Babcock v. Jackson, 12 N.Y.2d 473, 191 N.E.2d 279 (1963), and Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221. N.E.2d 380 (1966). The trial court properly applied Arizona law.

## CONCLUSION

Having resolved both legal questions against the appellant, as did the trial court, there is ample evidence to support the judgment of the trial court.

Affirmed.

WREN, P. J., and EUBANK, J., concur.

NOTE: Judge DONALD F. FROEB having requested that he be relieved from consideration of this matter, Judge WILLIAM E. EUBANK was called to sit in his stead and participate in the determination of this decision.