671 P.2d 896

George WENDELKEN, a single
man, Petitioner,

v.

SUPERIOR COURT of the State of Arizo-
na, In and For the COUNTY OF PIMA,
and the Honorable Lillian S. Fisher, a
Judge thereof; and Henry S. Sherrill,
Real Party in Interest, Respondents.

No. 16567–PR.

Supreme Court of Arizona,
In Banc.

Sept. 26, 1983.

**456**

Goldman & Kaplan by David L. Sandweiss, Phoenix, for petitioner.

Bury & Moeller by David C. Bury, Tucson, for respondents.

GORDON, Vice Chief Justice:

George Wendelken, the plaintiff-petitioner, is a sixty-six year old widower and a member of an organization known as "Arizona Singles Who's Who." Wendelken is a resident of Scottsdale, Arizona. The defendant-real party in interest-respondent, Henry S. Sherrill, is also a member of "Arizona Singles Who's Who" and, in addition, belongs to a California organization, "International Singles Who's Who." Sherrill is a resident of Tucson, Arizona, with his home and business there. Sherrill also has a vacation home in Puerto Penasco (Rocky Point), Sonora, Mexico.

Sometime prior to October 12, 1979, the "Arizona Singles Who's Who" circulated an invitation from Sherrill to club members in Phoenix soliciting reservations for a Columbus Day weekend party to be held at Sherrill's Puerto Penasco property. A similar invitation was circulated by the "International Singles Who's Who." A personal letter from Sherrill detailing the planned weekend was also distributed.

With two friends, Wendelken arrived at Sherrill's Puerto Penasco home during the afternoon of October 12, 1979. Upon his arrival, he discovered that the Mexican government had shut off all electricity to the Sherrill property. It was still daylight, though, and Wendelken and his companions were able to move about the house and to walk down a path to the beach without difficulty. However, after dark, the house and grounds were illuminated only by candlelight. While walking along the path that led from Sherrill's house to the beach, Wendelken fell several feet over the edge of the path and sustained a broken hip. Other guests took Wendelken to a Mexican clinic for examination and then arranged with the Arizona Department of Public Safety for helicopter transportation to the Tucson Veteran's Administration Hospital. There, he underwent surgery and subsequent care.

Wendelken timely filed suit against Sherrill in Pima County, Arizona, seeking compensation for his injuries, his medical expenses, and his lost earnings. Trial on the matter was set for February 8, 1983. On January 5, 1983, the trial court, the Honorable Lillian S. Fisher presiding, entered a minute entry granting Sherrill's Motion for Partial Summary Judgment and ordering that Mexican law would apply to "the issues of negligence, damages, and standard of care, etc." Wendelken filed a Petition for Special Action with the Court of Appeals Division Two (2 CA–CIV 4731) to vacate the trial court's order. Division Two dismissed that petition on March 10, 1983. This petition for review followed. Jurisdiction is found pursuant to the Arizona Constitution Art. 6, § 5(3) and the Arizona Rules of Civil Appellate Procedure, Rule 23. As we find that Arizona law should apply to all aspects of this case, we vacate the Court of Appeal's order dated March 10, 1983, as

well as the trial court's ruling which granted Sherrill's Motion for Partial Summary Judgment, and remand the matter to the Superior Court for further proceedings consistent with this opinion.

This petition for review raises only one issue: whether the laws of the country of Mexico or the laws of the State of Arizona should apply to this action. To make this choice between laws, we must look to the conflicts laws of Arizona, the forum state.

In *Schwartz v. Schwartz,* 103 Ariz. 562, 447 P.2d 254 (1968), this Court adopted the rules embodied in the Restatement (Second) of Conflict of Laws as the rules for Arizona. In so doing, we discarded the doctrine of *lex loci delicti.* Had this case arisen while *lex loci* was still in effect, our response would have been automatic: since this incident occurred in Mexico, that country's law would be applied to all substantive issues. However, as this case arose after the demise of *lex loci,* our response is not at all automatic.

■ The Restatement (Second) § 145 sets forth the general principle by which tort choice of law questions are to be decided. Approved by this court in *Schwartz,*[1] § 145 provides:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered. "These contacts are to be evaluated according to their relative importance with respect to the particular issue."

As § 145 specifically incorporates § 6, which enumerates principles underlying all choice of law questions, that section also must be considered. *See Gordon v. Kramer,* 124 Ariz. 442, 604 P.2d 1153 (App.1979); *Moore v. Montes,* 22 Ariz.App. 562, 529 P.2d 716 (1974). Section 6 provides:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

■ As § 145(1) makes clear, our task is to determine which state[2] has the "most significant relationship" to the parties and the issues in question. Of the four contacts specified in § 145(2), two obviously attach to Mexico—the place of Wendelken's injury and the place of Sherrill's alleged negligence. However, the other two contacts attach to Arizona—both Wendelken and Sherrill are domiciled in Arizona, both are

---

1. At the time of *Schwartz,* the Restatement (Second) was in tentative form. This section was then numbered as § 379 and contained slightly different language.

2. The Restatement (Second) uses "state" broadly to denote any territorial unit with a distinct general body of law. *See* § 3. Thus, the term includes Mexico which has a federal Civil Code.

residents of Arizona,[3] both are American nationals, Sherrill advertised this weekend party in Arizona via an Arizona organization of which both Sherrill and Wendelken are members, the solicitation reached Wendelken in Arizona, and the reservation was accepted in Arizona. Only the destination involved was Mexico. The "relationship between the parties" centered in Arizona. As we have made clear, "the determination of which state has the most significant contacts is primarily qualitative, not quantitative." *Schwartz, supra,* 103 Ariz. at 565, 447 P.2d at 257. Having established the numerical distribution of the important contacts, we now must evaluate those contacts to determine which law should apply. It is in this evaluation that the principles of § 6 are considered.

Our choice of law in this matter should have little effect on the harmonious relationship or on the commercial interaction between Arizona and Mexico. This was a purely private relationship between two Arizona residents. Neither public accommodation nor public transportation facilities was utilized. Had this trip been sponsored by the Mexican government instead of by a private American citizen or had the accident occurred at a Mexican hotel instead of at a private home, Mexican tourism might have been affected. In either event, this element would take on a greater weight in the choice of law decision. Those facts, however, are not before us.

Arizona, in addition to being the forum state and the place of the trial, has considerable interest in this matter. Both parties are domiciliaries of Arizona giving this state a natural interest in each of them. One aspect of that interest is the appropriate compensation of Wendelken for his losses. Striving insofar as possible to make the

injured party whole, *Riexinger v. Ashton Co.,* 9 Ariz.App. 406, 453 P.2d 235 (1969), Arizona allows unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost earnings, and diminished earning capacity. *See, e.g., Standard Oil Co. v. Shields,* 58 Ariz. 239, 119 P.2d 116 (1941); *Allen v. Devereaux,* 5 Ariz.App. 323, 426 P.2d 659 (1967); R.A.J.I. Negligence 10. This is in sharp contrast to the compensatory scheme of Mexico. The parties have supplied this Court with a translation of Article 1915 of the Civil Code of Mexico. According to that translation, not only are damages resulting from personal injury recoverable only to the extent allowed by a quota system included in the Mexican Federal Labor Law, but the maximum wage that can be taken into account in this determination is twenty-five pesos per day.[4] As both Wendelken and Sherrill are Arizona residents, there is little reason to apply Mexico's measure of damages and undercompensate Wendelken for his losses. Faced with a similar situation, the Texas Supreme Court concluded:

> "The only contact Mexico has with this case is the fact that the accident occurred there. Further, it makes little sense to apply Mexico's measure of damages, which indexes the amount of recovery to the prevailing wages set by the labor law of that nation, when both [the plaintiff and the defendant] are residents of Texas."

*Gutierrez v. Collins,* 583 S.W.2d 312, 319 (Tex.1979). The measure of Wendelken's damage recovery for his injuries is of interest to this state not only because he is a domiciliary, but also because appropriate compensation helps guarantee payment to his Arizona medical providers and because,

---

3. Sherrill repeatedly refers to himself as being a "resident of Mexico." However, his own testimony at his deposition indicates that his property in Puerto Penasco was used only intermittently and then as a vacation spot.

   "Q. And you have a home in Rocky Point?
   "A. Right.
   "Q. How long have you had that home?
   "A. March 1, 1978.

   "Q. Do you use that primarily as a vacation home?
   "A. Primarily.
   "Q. How often, on an annual basis, do you visit that residence?
   "A. One week per month."

4. On the date of Wendelken's accident, twenty-five pesos equalled $1.0975. At current exchange rates, the value is only $0.1675.

if other resources are not available, the burden for caring for his injuries will fall upon the State of Arizona.

Mexico also has an interest in the duties and the extent of the liability imposed upon Sherrill. This interest is based on Sherrill's possessory interest in Mexican land.[5] The policy of limited liability just explained is apparently designed to shield Mexican citizens from large judgments and is undoubtedly linked to Mexico's socialized system of health care. As an injured Mexican's health care costs would be paid for, the Civil Code limits damages to reimbursement, by the above-mentioned quota system, of his lost wages. As neither Wendelken nor Sherrill is a Mexican citizen or a Mexican wage-earner, Mexico's interest does not overcome that of Arizona.

Respondent Sherrill seeks to distinguish this case from automobile accident cases involving forum state plaintiffs and forum state defendants but an out-of-state accident. In those cases, because mere fortuity determines the place of the injury, the forum state law is generally applied. *See Gordon v. Kramer, supra; see generally* Annot., 29 A.L.R.3d 603 (1970 and Supp.). Sherrill argues that this injury and the alleged negligence that caused it could only have occurred in Mexico and asserts that Mexico's interest in establishing duties and liabilities of possessors of Mexican land should be the decisive consideration in our choice of law determination. This would signal a return to the doctrine of *lex loci delicti* in those cases where the duties of owners and occupiers of land are at issue. We refuse to return to *lex loci* for these cases. In support of his argument, Sherrill cites *Casey v. Manson Construction Company,* 247 Or. 274, 428 P.2d 898 (1967). *Casey,* however, is distinguishable from the case *sub judice.* In *Casey,* the plaintiff's husband, an Oregon resident, was injured in Washington on premises owned by two Washington corporations. In deciding to apply Washington negligence standards, the Oregon Supreme Court noted:

"Again, this is not an action between residents of Oregon, but is brought by an Oregon domiciliary against two Washington corporations."

*Id.* at 288, 428 P.2d at 905. Thus, the domicile factor was split between the two states and favored neither state's law. Faced with Washington as the place of the injury, the place of the alleged negligent conduct, and the place of the parties' relationship, the Oregon court looked to Washington's interest in the duties and liabilities of its landowners and applied Washington law to the action. Other courts, faced with forum state plaintiffs, out-of-state defendants, and out-of-state injuries, have similarly applied the other state's laws. *See, e.g., Crim v. International Harvester Company,* 646 F.2d 161 (5th Cir.1981) (applying Texas conflicts law); *Hotaling v. Smith,* 63 A.D.2d 219, 406 N.Y.S.2d 627 (1978). However, when confronted with forum state plaintiffs and forum state defendants, but out-of-state injuries, courts have not been reluctant to apply forum state law even where there was no fortuity involved in the situs of the accident. For example, in *Rose v. Port of New York Authority,* 61 N.J. 129, 293 A.2d 371 (1972), the New Jersey plaintiff was struck by an automatic door at John F. Kennedy International Airport in New York City. In opting to apply its own law, the New Jersey Supreme Court reasoned:

"The plaintiff is a resident of New Jersey and the defendant is a bi-state governmental agency in which this State has an interest no different than that of New York. Whether the misadventure took place at Kennedy Airport or Newark Airport would seem of no significance; the situs of the event seems of little moment."

*Id.,* at 140, 293 A.2d at 377. *See also, Brown v. Church of Holy Name of Jesus,* 105 R.I. 322, 326, 252 A.2d 176, 179 (1969) (applying forum state law because "the place of the accident is but one of the

---

**5.** It is the existence of this interest of Mexico that prevents this from being a "false conflict" as Wendelken has urged. *See,* R. Leflar, *American Conflicts Law* § 93 (3d ed. 1977); Traynor, "Is This Conflict Really Necessary?" 37 Tex.L. Rev. 657 (1959).

significant factors to be considered in the weighing of the multiple factor concept.")

As neither party anticipated a negligent act, it is likely that neither acted with any thought to the consequences of his conduct or to the law that might be applied to any dispute resolution. However, Sherrill can not claim that the imposition of Arizona negligence or damage standards is an unfair surprise. He has offered no indication that he relied in any way on the Mexican limited liability scheme. Rather, he concedes that he purchased liability insurance on his Puerto Penasco property through an Arizona insurance carrier in the amount of $300,000.00, and obviously relied on the expectation that this Arizona insurance would cover any liability resulting from his interest in the Mexican land.

The remaining § 6 factors may be dealt with more quickly in this case. The Arizona and Mexican policies underlying negligence compensation have been fully set out above. Predictability and uniformity of result are of greatest importance in cases where the parties are likely to give advance thought to the legal consequences of their transactions, i.e., contracts or will validity, see, Restatement (Second) of Conflict of Laws § 6, comment i, not where negligence is at issue. Finally, Mexican laws, though in Spanish, could certainly be presented by counsel to the finder of fact in such a way that its application would be no more difficult than the application of Arizona law.

Having fully considered the relevant factors and the interests of both states, we conclude that Arizona has the most significant relationship to this occurrence and to these parties. As this state borders the state of Sonora, Mexico, our citizens are frequent visitors there and this issue will undoubtedly arise again. Our decision does not affect the sovereignty of the State of Sonora nor the Country of Mexico, but does protect our own citizens. We therefore vacate the trial court's ruling which granted Sherrill's Motion for Partial Summary Judgment and ordered that Mexican law would apply to all substantive issues and remand to the Superior Court for further proceedings.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.