703 P.2d 1190

Barbara BRYANT, as surviving spouse of Paul F. Bryant, deceased, on behalf of herself and the minor children and mother of Paul F. Bryant, deceased; Capital Bank, a national association, Executor of the Estate of Joyce L. Branham, deceased, Petitioners,

and

Alburquerque National Bank, a national banking corporation, as personal representative of the Estate of Mary T. Peters, deceased, on behalf of Laura Ann Peters and Craig Ashley Peters, the minor children of Mary T. Peters, deceased, Intervenors,

v.

Honorable Barry G. SILVERMAN, Judge of the Superior Court of Arizona for Maricopa County, Respondent,

and

SUN WEST AIRLINES, an Arizona corporation, Piper Aircraft Corporation, a Pennsylvania corporation; Edo Corporation, a New York corporation; and Century Flight Systems, Inc., a Texas corporation, Real Parties in Interest.

No. 17965–SA.

Supreme Court of Arizona,
En Banc.

June 4, 1985.

Reconsideration Denied Aug. 20, 1985.

**42**

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by John H. Westover, Charles J. Muchmore, Phoenix, for petitioners.

Bentley, Brandes & Brandes by Robert M. Brandes, Phoenix, for intervenors.

Beer & Toone by Thomas L. Toone, Rick E. Olson, Phoenix, for respondent.

GORDON, Vice Chief Justice:

Petitioners, Barbara Bryant, beneficiary of Paul E. Bryant deceased, and Capital Bank, executor for Joyce L. Branham, deceased, bring this special action challenging an order of the trial court that Colorado law apply to the issues of compensatory and punitive damages in petitioners' wrongful death action. The Albuquerque National Bank, personal representative of Mary T. Peters, was allowed to intervene in this special action. The primary issue raised in this special action is whether Arizona or Colorado wrongful death damages law should apply. We have jurisdiction pursuant to Ariz. Const. art. 6 § 5(1).

This case arises out of a tragic airplane crash which took the lives of several victims. On December 31, 1981, Sun West Airlines Flight 104 departed from Alburquerque, New Mexico en route to Durango, Colorado. Upon reaching Durango, the plane crashed while attempting to land at the airport, killing the pilot and passengers Paul Bryant, Mary Peters and Joyce Branham. Joyce Branham's children, Stacy and Jimmy Sadler, Jr. survived the crash. The cause of the crash is disputed by plaintiffs and defendant.

At the time of the crash, Paul Bryant was domiciled in Arizona, Mary Peters in New Mexico, and Joyce Branham in Texas. Sun West Airlines (hereafter Sun West) was an Arizona corporation having its principal place of business in Phoenix and servicing cities in New Mexico, Colorado and Arizona. All three decedents were on their way to Colorado to enjoy ski holidays.

In February 1982, plaintiff Barbara Bryant filed a wrongful death action in Arizona for the death of her husband Paul Bryant against defendant Sun West. Subsequently, similar actions were filed in Arizona for the deaths of Mary Peters, Joyce Branham and for the injuries to Stacy and Jimmy Sadler. All actions were consolidated.

After considering cross motions for summary judgment relating to the issues of compensatory and punitive damages, the trial judge found that Colorado had the most significant relationship to the occurrence and the parties on all compensatory and punitive damage issues, and therefore, held that Colorado law governed all damage issues. Under Colorado law, compensatory damages in wrongful death actions are limited to the net pecuniary loss suffered by the survivor (beneficiary). *Lewis v. Great Western Distributing Co. of Borger*, 168 Colo. 424, 451 P.2d 754 (1969). Additionally, Colorado prohibits recovery of punitive damages in wrongful death actions. *Moffatt v. Tenney*, 17 Colo. 189, 30 P. 348 (1892). All plaintiffs would prefer that Arizona law be applied to this case since Arizona places no limitation on compensatory or punitive damages. Accordingly, plaintiffs contend that Arizona law should govern the damage issues because plaintiff-Bryant, decedent-Paul Bryant, and defendant-Sun West were domiciled in Arizona at the time of the crash and because the misconduct occurred in Arizona. Sun West, on the other hand, argues that since Colorado was the place of injury and conduct and the place where the relationship between the parties arose, Colorado law should apply.

In determining which state's law to apply, this Court has adopted the rules embodied in the Restatement (Second) of Conflicts (1971) to analyze and solve conflicts problems arising in Arizona. *See Schwartz v. Schwartz*, 103 Ariz. 562, 447 P.2d 254 (1968) (discarding the doctrine of *lex loci*

*delicti).* Restatement (Second) of Conflicts (1971) §§ 175 and 178 deal specifically with the choice of law principles in an action for wrongful death and to the damage issues in such an action. Restatement § 178 sets out the choice of law principles for wrongful death damages, and states:

"§ 178 Damages

"The law selected by application of the rule of § 175 [wrongful death] determines the measure of damages in an action for wrongful death."

Comment b of this section notes that merely because the conduct and injury occur in one state does not *ipso facto* require application of that state's law to the issue of damages, but instead, the law of the state with the "dominant interest" or "greater interest" should govern:

"b. *Rationale.* The choice-of-law principles stated in § 6 should be applied in determining the state whose local law will be applied to determine the measure of damages in a wrongful death action. In general, this should be the state which has the *dominant interest* in the determination of this issue. *The state of conduct and injury will not, by reason of these contacts alone, be the state which is primarily concerned with the measure of damages in a wrongful death action.* The local law of this state will, however, be applied unless some other state has a *greater interest* in the determination of this issue. In a situation where one state is the state of domicile of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages." (emphasis added)

Restatement § 178 points to § 175 for the principles in determining conflict issues in wrongful death cases:

"§ 175. Right of Action for Death

"In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a *more significant relationship* under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." (emphasis added)

As in Restatement § 178, this section emphasizes that the state with the "most significant relationship" or "greater interest" should govern rather than the place of injury:

"d. *Rationale. The rule of this Section calls for application of the local law of the state where the injury occurred unless,* with respect to the particular issue, *some other state has a more significant relationship to the occurrence and the parties.* Whether there is such another state should be determined in the light of the choice-of-law principles stated in § 6. In large part, the answer to this question will depend upon whether some other state has a *greater interest* in the determination of the particular issue than the state where the injury occurred. The extent of the interest of each of the potentially interested states should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and of the particular issue involved (see § 145, Comments c–d)." (emphasis added)

Restatement § 175, comment d. According to Restatement §§ 175 and 178, determination of which state has the greater interest in damages is influenced largely by the factors set forth in Restatement §§ 6 and 145.

Restatement § 145 sets forth the general principles by which tort choice of law questions are to be decided:

"§ 145. The General Principle

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to deter-

mine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Restatement § 6 sets out the various policy considerations and other factors for making a choice of law selection:

"§ 6. Choice of Law Principles

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

Our analysis starts with the four contacts specified in § 145(2), which will be taken into account in applying the principles enunciated in § 6 in ultimately determining whether Arizona or Colorado has the "most significant relationship" to the occurrence and the parties.[1] As to the first contact, the place where the injuries occurred is Colorado.

The location of the second contact, the place of the conduct causing the injury, is unclear. Both plaintiffs and defendant contest the cause of the crash. Plaintiffs' position is that the conduct occurred principally in Arizona because that is where Sun West negligently trained its pilots and adopted the policies relating to oxygen equipment in its fleet. Sun West argues that the cause of the crash was due to pilot error or mechanical failure which occurred exclusively in Colorado.

As to the third factor, plaintiff Bryant was domiciled in Arizona, as was her deceased husband, at the time of the crash. Sun West was incorporated and had its principal place of business in Arizona.[2]

Fourth, since the decedent, Bryant, purchased his ticket from Sun West in Durango, the contractual relationship between decedent and Sun West centered in Colorado.[3]

■ Thus, of the four contacts, two attach to Colorado, the place of injury and relationship between the parties, one attaches to Arizona, the domicile of the parties, and one is questionable, the place of

---

1. Because our choice of law analysis could result in one state having the greater interest in compensatory damages and the other punitive damages, we will apply the doctrine of depecage in resolving this case which allows us to apply different state laws to different issues. *See, e.g., In re Air Crash Near Chicago,* 644 F.2d 594, 611 (7th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 (1981) (approving concept of "depecage"); Depecage: A Common Phenomenon In Choice of Law, 73 Colum.L.Rev. 58, 59–60 (1973) (depecage endorsed); Leflar, American Conflicts Law § 109, 221–22 (3rd ed. 1977); Wilde, Depecage in the Choice of Tort Law, 41 S.Cal.L.Rev. 329 (1968).

2. Neither plaintiffs nor defendant argue that New Mexico or Texas wrongful death damage law should apply to this action, but instead all parties limited their arguments to Colorado and Arizona. Therefore, we will discuss all contacts in Arizona and Colorado and only those contacts of New Mexico or Texas when such contacts would favor application of Arizona or Colorado law. We need not decide whether in future cases different states' laws could be applied to different plaintiffs in the same case.

3. Joyce Branham purchased her ticket in Colorado and Mary Peters purchased her ticket in New Mexico.

conduct. The determination of which state has the most significant contacts, however, is primarily qualitative and not quantitative. *Schwartz v. Schwartz, supra; Moore v. Montes,* 22 Ariz.App. 562, 529 P.2d 716 (1975). We must determine, therefore, the weight to be given each contact in light of the issues and facts of this case. See Restatement § 145(2) (providing that contacts are evaluated according to their relative importance to the particular issue).

■ Although Colorado is the state of injury, the state where the injury occurs does not have a strong interest in compensation if the injured plaintiff is a non-resident. *See Wendelken v. Superior Court,* 137 Ariz. 455, 671 P.2d 896 (1983); *Fox v. Morrison Motor Freight, Inc.,* 25 Ohio St.2d 193, 267 N.E.2d 405 *cert. denied,* 403 U.S. 931, 91 S.Ct. 2254, 29 L.Ed.2d 710 (1971); *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). Compensation of an injured plaintiff is primarily a concern of the state in which plaintiff is domiciled. *Branyan v. Alpena Flying Service,* 65 Mich.App. 1, 236 N.W.2d 739 (1975); *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796, 806 (1964).[4]

As to punitive damages, in airplane crash cases the place of injury is much more fortuitous than the place defendant selects as his place of incorporation and principal place of business or the place of misconduct. Thus, the state where an injury occurs has less interest in deterrence and less ability to control behavior by deterrence or punishment than the state where the defendant airline is domiciled or the state where the misconduct occurred. *In re Air Crash Near Chicago,* 644 F.2d at 615 (7th Cir.1981); *Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 405 N.Y.S.2d 441, 376 N.E.2d 914 (1978). Thus, the place of injury carries little weight in our selection of the applicable state law on punitive damages.

The third factor, the domicile of plaintiff and defendant, is significant. Comment b of Restatement (Second) of Conflicts § 178 suggests that if the defendant, the decedent, and the beneficiaries are domiciled in one state, that state's law should govern the damage issues:

"b.

\*     \*     \*     \*     \*     \*

"The state of conduct and injury will not, by reason of these contacts alone, be the state which is primarily concerned with the measure of damages in a wrongful death action. The local law of this state will, however, be applied unless some other state has a greater interest in the determination of this issue. *In a situation where one state is the state of domicil of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages.*" (emphasis added)

Many jurisdictions, including Arizona have determined that the state where plaintiff and defendant reside has a strong interest in making plaintiff whole and deterring wrongful conduct. *See Wendelken, supra; Branyan v. Alpena Flying Service, supra; Fox v. Morrison Motor Freight, Inc., supra; Kilberg v. Northeast Airlines, Inc.* 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961); *Shaheen v. Schoenberger,* 92 Mich.App. 491, 285 N.W.2d 343 (1979); *Reich v. Purcell, supra; Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917, *cert. dismissed,* 393 U.S. 957, 89 S.Ct. 387, 21 L.Ed.2d 371 (1968); *Griffith v. United Airlines, Inc. supra; First National Bank in Fort Collins v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973); *In re Air Crash Near Chicago, supra.* Since decedent Bryant, his beneficiaries, and defendant were all domiciled in Arizona at the time of the crash, Arizona has a strong interest in this case.

---

**4.** The only interest of the state of injury would be in the compensation of those who rendered medical aid and other assistance to the injured parties. Where immediate death occurs, however, the state has no such interest. *Griffith v. United Airlines, supra,* 203 A.2d at 807.

Finally, although the ticket purchase centered the relationship between the parties in Colorado, this contact is of relatively low importance to this case. Although the relationship between the parties is a contractual relationship, the terms of the contract are not in dispute but only give rise to the duty of care owed by the airline to the passenger on which this action is based. *See In re Air Crash Near Chicago*, 644 F.2d at 612 (place relationship occurred has low interest in either punishment or protection of nonresident defendants).

Thus, under the facts of this case the domicile contact carries great weight in our determination of which state's law to apply; less significant are the place of injury and the relationship.

After determining the distribution of the contacts and their relative weight, we must next determine the state of the applicable law in light of the choice of law principles stated in § 6 of the Restatement (Second) of Conflicts. As noted by Restatement § 175 comment d, "the answer to this question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred."

The harmonious relationship or commercial interaction between Arizona and Colorado would best be fostered by applying Arizona law. Application of Arizona damage law allowing unlimited compensatory and punitive damages would fully compensate the Arizona plaintiffs and would deter the wrongful conduct of Sun West or other Arizona based airlines in Arizona and other states' air space. Thus, any interest Colorado has in providing safe travel through its air space would be protected. Application of Colorado law, however, would shield Sun West from a high damage award and potentially leave the Arizona plaintiff not fully compensated. Additionally, Colorado law would not deter future misconduct in Colorado or Arizona.

Certainly, predictability and uniformity of result are of greatest importance when parties are likely to give advance thought to the legal consequences of their transactions, such as the effect and validity of contracts or wills, and not when negligence is at issue. *Wendelken v. Superior Court, supra, Gordon v. Kramer,* 124 Ariz. 442, 604 P.2d 1153 (App.1980); Restatement (Second) of Conflicts § 6, comment c. Furthermore, since airplane accidents are not planned, these considerations are largely irrelevant. *Cf. Gordon v. Kramer, supra* (consideration of predictability and uniformity irrelevant to unplanned automobile accidents).

In resolving the factual issues on wrongful death damages, the jury is capable of applying Arizona or Colorado wrongful death damage principles with about equal ease. *See Wendelken v. Superior Court, supra; Gordon v. Kramer, supra.*

Protection of justified expectations also is of little importance in this case. Since airplane crash accidents are unanticipated negligent acts, it is not likely that either party acted with the consequences of his conduct in mind or the law to be applied should a dispute arise out of such negligent conduct. Additionally, Sun West did fly over New Mexico and other states which did not limit wrongful death damages, and therefore, should have expected that at some time it might be subject to the laws of those states and face large verdicts against it. Accordingly, Sun West could have protected itself. *See Griffith v. United Air Lines, Inc., supra.*

The three last considerations deal with policy: the basic policies underlying the particular field of law involved, here tort law, and the relevant policies of the forum state, Arizona, and other interested states, Colorado, New Mexico and Texas.

■ The basic policies underlying tort law are to provide compensation for the injured victims, and to deter intentional and deliberate tortious conduct by imposing punitive damages. Prosser & Keeton on Torts, § 2 (5th Ed.1984). Both Arizona and Colorado provide compensation for the injured victims, consistent with basic tort law. Only Arizona, however, allows punitive damages to deter similar future con-

duct. *Cassel v. Schacht,* 140 Ariz. 495, 683 P.2d 294 (1984). Thus, basic tort law is better fostered by applying Arizona law.

In considering the relevant policies of Arizona and Colorado, the laws of both states differ significantly. Arizona has a strong policy interest in fully compensating injured plaintiffs to make them whole. Thus, Arizona allows unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost earnings, and diminished earning capacity. *Wendelken, supra; see also Standard Oil Co. v. Shields,* 58 Ariz. 239, 119 P.2d 116 (1941); *Allen v. Devereaux,* 5 Ariz.App. 323, 426 P.2d 659 (1967); RAJI Negligence 10. The policy of fully compensating an injured plaintiff is embodied in our Constitution, Art. 2, § 31, which reads:

> "No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person."

*Cf. Griffith v. United Air Lines, Inc. supra,* (strong interest in compensating plaintiff fully is embodied in constitution of Pennsylvania). Thus, Arizona has a strong interest in compensating plaintiff for her injuries because plaintiff is a domiciliary and also because compensation helps injured plaintiffs make their medical bill payments to Arizona medical providers, preventing them from becoming wards of the state. *See Wendelken, supra.*

Colorado limits compensatory damages for wrongful death to plaintiff's net pecuniary loss. *Espinoza v. O'Dell,* 633 P.2d 455, 464 (Colo.1981); *Herbertson v. Russell,* 150 Colo. 110, 371 P.2d 422, 425–26 (1962). This limitation prevents the jury from awarding speculative damages and more importantly, protects Colorado defendants from large verdicts. *See* Note, Blind Imitation of the Past—Analysis of Pecuniary Damages in Wrongful Death Actions, 49 Den.L.J. 99 (1972); *See also Griffith v. United Air Lines, Inc., supra.* As noted above, however, defendant Sun West Airlines is domiciled in Arizona with both its principal place of business and corporate offices there. Colorado's policy of limited liability is not fostered where defendant is not a resident of Colorado. Thus, Arizona's interest in compensation is stronger than Colorado's.

■ As to punitive damages, Arizona permits recovery of punitive damages in wrongful death actions. *Boies v. Cole,* 99 Ariz. 198, 407 P.2d 917 (1965). The purpose of allowing punitive damages is to punish defendant for his conduct and deter defendant or others from engaging in similar conduct in the future. *Cassel v. Schacht, supra.* Since Sun West is incorporated and has its principal place of business in Arizona, Arizona has a strong interest in assuring that one of its domiciliaries does not engage in gross, wanton, malicious or oppressive conduct.

On the other hand, Colorado does not permit punitive damages in a wrongful death action. *See* Colorado Rev.Statutes § 13–21–203 (1973); *Herbertson v. Russell, supra.* In interpreting the language of its wrongful death statute, Colorado courts determined that the general assembly had not authorized exemplary damages by the language employed in the statute. *Moffatt v. Tenney, supra.* The public policy behind such a denial is not clear. Perhaps it was to protect Colorado corporate defendants from excess liability. If so, since Sun West is domiciled in Arizona, Colorado has no interest in protecting an Arizona defendant. In any case, there does not appear to be a strong policy against punitive damages in Colorado because such damages are allowed in other tort actions. *Cf. Short v. Downs,* 36 Colo.App. 109, 537 P.2d 754 (1975) (medical malpractice); *McNeill v. Allen,* 35 Colo.App. 317, 534 P.2d 813 (1975); *Barnes v. Lehman,* 118 Colo. 161, 193 P.2d 273 (1948) (personal assault and battery). Since this case involves an Arizona corporate defendant causing injury to an Arizona domiciliary, Arizona has the dominant interest in controlling Sun West's conduct.

Our last probe into public policy considerations concerns the policies of Texas and

**48**

New Mexico relating to compensatory and punitive damages.

Texas, like Arizona, allows recovery for intangible personal losses. *See Sanchez v. Schindler*, 651 S.W.2d 249, 254 (Tex.1983) (recovery of loss of society and companionship and damages for mental anguish for death of minor child allowed); *Continental Bus System, Inc. v. Biggers*, 322 S.W.2d 1 (Tex.Civ.App.1959) (loss of parental care, guidance, training compensable). Thus, the policies underlying wrongful death statutes relating to compensatory damages in Arizona and Texas do not differ.

The New Mexico wrongful death statute permits compensatory damages beyond pecuniary loss, *see Stang v. Hertz Corp.*, 81 N.M. 348, 467 P.2d 14 (1970) (substantial damages recoverable without proof of pecuniary loss); *Baca v. Baca*, 81 N.M. 734, 472 P.2d 997 (App.1970), (accord), although not intangibles such as loss of society. *Wilson v. Wylie*, 86 N.M. 9, 518 P.2d 1213 (App.1973). Thus New Mexico goes beyond Colorado pecuniary loss limitations and allows awards involving intangibles but not to the extent of Arizona. In order to foster the policy of New Mexico, Arizona law should be applied to avoid undercompensating the New Mexico plaintiff.

Both New Mexico and Texas permit recovery of punitive damages in wrongful death cases. N.M.Stat.Ann. § 41–2–3 (1978); Tex.Stat.Ann. art. 4673 (Vernon's 1952). Thus, both of these states support use of Arizona law on punitive damages.

■ After considering the relevant factors and the interest of both states, we conclude that Arizona has the greatest interest in the determination of this case. Although the injury and relationship between the litigants centered in Colorado, the value of these contacts is minimal in this case. The domicile of the litigants, when considered with the policy behind both Colorado and Arizona damage laws, points to application of Arizona law. This determination best protects our citizens and those of New Mexico and Texas from wrongful conduct by another of our citizens, without affecting trade and travel between Arizona and Colorado.

The petitioners' prayer for relief is granted. The portion of the order of the respondent trial judge dated January 31, 1985, striking petitioners' claim for punitive damages for wrongful death and limiting petitioners' compensatory damages to net pecuniary loss is vacated, and the court is directed to grant the motion of petitioners for summary judgment that Arizona law applies to the action below.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.